IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERLAKE MECALUX, INC., | ) |
| | ) |
| Plaintiff | ) No. 1:09-cv-01610-WWC |
| | ) |
| v. | ) |
| | ) HON. WILLIAM W. CALDWELL |
| SUMMIT STEEL & MANUFACTURING, ADAM L. WITMAN, BOB NEWTON, RONALD K. GUDINAS, AND GEORGE MERRITT, JR., | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION OF DEFENDANT,
SUMMIT STEEL AND MANUFACTURING, INC.,
TO REFER AND/OR TRANSFER CASE**

Defendant, Summit Steel & Manufacturing, Inc. ("Summit"), by its undersigned counsel, hereby submits its Brief in support of its Motion, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1404(a), to refer and/or transfer the above-captioned action to the United States Bankruptcy Court for the District of Delaware.

**I.    INTRODUCTION AND RELEVANT BACKGROUND**

Having failed in its incarnation as J&D Company, LLC, to obtain injunctive relief against Summit, Interlake Mecalux, Inc. ("Interlake"), has now filed

"revised"[1] claims that arise entirely out of same bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), at Docket No. 09-10019 (the "Bankruptcy Action"). In fact, on August 10, 2009, Summit filed an adversary proceeding (the "Adversary Proceeding")[2] against J&D in the Bankruptcy Action for, among other things, a declaration of rights concerning the very same Non-Disclosure Agreement (the "NDA") at issue in this lawsuit. Much like the J&D Lawsuit, this lawsuit is a "core" bankruptcy proceeding. Exclusive jurisdiction for such proceedings lies with the Bankruptcy Court.

As counsel for Interlake now acknowledges (contrary to prior representations to the Court), J&D is a bankruptcy debtor-in-possession in the Bankruptcy Action. As set forth in submissions in the J&D Lawsuit, many of the allegations of Interlake's Complaint have already been directly refuted by the

---

[1] Interlake's Complaint abandons the purported claim for violation of the Federal Stored Communications Act (the "SCA Claim") set forth in the Complaint of J&D Company, LLC ("J&D"), which was the subject of Summit's Motion to Dismiss in the prior J&D lawsuit (the "J&D Lawsuit"). Counsel for Interlake, when purporting to represent J&D, represented to the Court that the SCA Claim was a particularly strong claim that entitled J&D to immediate injunctive relief. As set forth in Summit's Motion to Dismiss, the SCA Claim was frivolous. Summit intends to seek sanctions against J&D/Interlake arising out of, among other things, its/their pursuit of the SCA Claim.

[2] The Complaint filed by Summit in the Adversary Proceeding is attached as Exhibit A.

testimony of J&D's Chief Restructuring Officer, Daniel Wikel ("Mr. Wikel"), in the Bankruptcy Action.[3]

Mr. Wikel's testimony in the Bankruptcy Action established that J&D elected to sell its two business divisions - its service and manufacturing divisions - separately in bankruptcy. [N.T., pp. 29-33, 56-65]. To this end, J&D invited Summit to bid for J&D's service division. Summit and J&D agreed to the NDA with respect to Summit's consideration of the service division alone. [See Declaration of Mr. Wikel, submitted in the Bankruptcy Action and attached as Exhibit C, ¶ 33].

After some initial consideration of the service division, Summit decided to pursue only the purchase of the manufacturing division. Summit then conducted due diligence to prepare its offer for the manufacturing division, which included reviewing information that J&D made available to it and consulting with J&D employees. [N.T., pp. 69-70, 73-79]. Mr. Wikel knew of, approved of, and facilitated this process. [Id.]. Summit's evaluation of and negotiations with J&D occurred from late March 2009 through June 2009. [Id.]. Mr. Wikel confirmed that Summit was the only serious prospective purchaser of the J&D manufacturing division during this time period. [Id., pp. 64-70]. Summit never agreed to a non-

---

[3] A copy of the Notes of Testimony ("N.T.") of the hearing in the Bankruptcy Action is attached as Exhibit B.

EX1 842211v1 08/31/09

disclosure agreement with respect to the J&D manufacturing division.

On June 10, 2009, Mr. Wikel informed Summit that J&D would be moving forward with Summit on its purchase of J&D's manufacturing division. [Id., pp. 64, 68]. Approximately one week later, however, Mr. Wikel secretly negotiated a purported private sale of the manufacturing division to a third party - Interlake (the "Sale"). [Id., pp. 56-58, 68-70]. Mr. Wikel never notified Summit of the Sale. [Id.]. Mr. Wikel failed even to provide Summit with an opportunity to better Interlake's offer. [Id.]. Notwithstanding the parties' agreement to negotiate in good faith, J&D shut Summit out of the sale process. Notwithstanding the continuous contact between J&D and Summit from March 2009 through June 2009, J&D then failed to serve Summit with a copy of its Motion seeking approval of the Sale.[4] [Id., pp. 26-27, 76]. Additionally, Interlake now employs the former head of J&D in a similar position at Interlake. [Id., pp. 70-71].

Summit learned of the Sale Motion literally days before the hearing scheduled for its approval when Summit's counsel discovered it listed on the docket of the Bankruptcy Action. [Id., pp. 26-27]. Summit quickly drafted an objection to challenge the intrinsic fairness of the sale process and filed it in the

---

[4] Counsel for J&D represented to the Bankruptcy Court that J&D served its Sale Motion upon a company located in California bearing the Summit name. [Id., pp. 26-27].

4

Bankruptcy Action.  Although the Bankruptcy Court overruled this objection, Judge Carey stated from the bench, after taking testimony and hearing argument, that "he understands that [Summit] thinks [it] was not dealt with openly and fairly. I understand that sentiment, sir." [Id., pp. 93-94].  Judge Carey added that the "record does reflect that things might have been handled differently." [Id., p. 95]. Summit has since filed an appeal.

On August 5, 2009, J&D filed the J&D Lawsuit.  As referenced above, counsel for J&D – now counsel for Interlake (an international mega-corporation with over 3,000 employees, eight production plants in six countries, its own sales structure in Europe, USA, Mexico, Argentina, Chile and Brazil, distributors in Asia, Africa, Australia and Central America, and $900 million in revenues in 2008) – pursued "emergency" relief on behalf of J&D, claiming that J&D's business had been and would continue to be irreparably harmed.  During a conference with the Court concerning J&D's request for a temporary restraining order – an order that, by its terms, would cause individuals to lose their jobs and would prevent Summit, a Berks County, Pennsylvania, steel manufacturer with approximately 40 employees and $15 million in revenues, from competing with J&D – counsel for J&D/Interlake represented to the Court that J&D's claims were strong and that J&D needed the Court's aid emergently.  J&D, however, had not even authorized counsel to bring suit on its behalf.  J&D discontinued the J&D Lawsuit after

requiring Summit to incur substantial costs responding to claims that, by counsel for J&D/Interlake's own belated admission, were frivolous.

Counsel for Interlake has since taken the position that Interlake, not J&D, has suffered the purportedly irreparable harm alleged in the J&D Lawsuit. How Interlake can straight-facedly argue to the Court that Summit has harmed it irreparably when its counsel just a few weeks ago alleged that J&D, not Interlake, had suffered the very same purportedly irreparable harm is an open question.

On August 10, 2009, after filing its Motion to Transfer in the J&D Lawsuit, Summit filed the Adversary Proceeding, asking the Bankruptcy Court to declare the NDA unenforceable. Instead of litigating in the Bankruptcy Court, Interlake has continued its anti-competitive, bad faith conduct[5] by filing this lawsuit, claiming now that J&D assigned to it the causes of action in the J&D Lawsuit[6], and continuing to assert claims that are, in light of the testimony already provided by

---

[5] Interlake submitted the Complaint from the J&D Lawsuit to the publisher of a steel industry trade publication and caused a defamatory and disparaging article concerning Summit to be published. The article is attached as Exhibit D. This is the subject of a lawsuit presently pending in the Court of Common Pleas of Berks County, Pennsylvania.

[6] Although Interlake claims that it is clear that it purchased cause of action under the NDA, Summit disagrees. The relevant Asset Purchase Agreement ("APA") identifies specifically the contracts transferred to the buyer and states that all other contracts are excluded from the Sale. The NDA is not identified in the APA as a contract included in the Sale.

Mr. Wikel, disingenuous. In any event, it is apparent on the face of the Complaint that, as in the J&D Lawsuit, the purportedly wrongful conduct that Interlake attributes to Summit occurred post-petition in connection with the administration of the bankruptcy estate.

## II. ARGUMENT

This action must be heard, if at all, in the Bankruptcy Court as it is a "core" bankruptcy proceeding. In any event, if the Court finds this lawsuit to be a "non-core" proceeding, it should refer or transfer the lawsuit to the Bankruptcy Court because it is unquestionably related to the Bankruptcy Action and the "first filed" Adversary Proceeding.

Courts have identified three general categories for purposes of subject matter jurisdiction in the bankruptcy court. In re Porter, 295 B.R. 529, 535 (Bankr. E.D. Pa. 2003).

"First, there are 'core' proceedings, which may be heard and resolved by the bankruptcy court via final judgment." Id. "Core proceedings represent those disputes that are so intertwined with the bankruptcy process that Congress has the power, under Article I of the Constitution, to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits." Id.

Second, a bankruptcy court may hear "non-core" proceedings. Id. at 536. "Non-core proceedings include the broader universe of all proceedings that are not

core proceedings but are nevertheless 'related to' a bankruptcy case." Id. (internal citation omitted).

Third, a bankruptcy court has no jurisdiction to hear those claims that "fall outside the definition of 'related to' because their outcome would have no effect upon the bankruptcy case." Id. at 538.

As an additional matter, "it is a universal and uncontroversial tenet of contract law that an assignee of a claim takes the same subject to all defenses that could validly have been raised by the defendant against the assignor at the time of the assignment." E-Time Sys., Inc. v. Voicestream Wireless Corp., No. 01-5754, 2002 U.S. Dist. LEXIS 15568, *34 (E.D. Pa. Aug. 19, 2002). An assignee "stands in the shoes" of the assignor and "assumes the assignment subject to all defects and defenses." Mid-Atlantic Equip. Corp. v. Elder, No. 95-CV-886, 1995 U.S. Dist. LEXIS 10588, *2 (E.D. Pa. July 24, 1995).

### A.   The Court Lacks Jurisdiction To Hear This Lawsuit As It Is A Core Proceeding.

A review of the applicable case law demonstrates that this lawsuit is a "core" bankruptcy proceeding. Accordingly, this lawsuit should be referred and/or transferred to the Bankruptcy Court because it has exclusive jurisdiction of such issues. See 28 U.S.C. § 157(b)(1); In re Continental Airlines, Inc., 125 F.3d 120, 130 (3d Cir. 1997); In re United Companies Fin. Corp., 241 B.R. 521, 525 (Bankr. D. Del. 1999).

An action of a debtor-in-possession concerning a post-petition breach of contract arising from the sale of the estate's assets "falls within the literal wording of 28 U.S.C. § 157(b)(2)(A), 'matters concerning the administration of the estate,' because it involves a claim that arose out of the administrative activities of a debtor-in-possession." In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir. 1987). Additionally, "[i]t falls within the literal wording of 28 U.S.C. 157(b)(2)(O), 'other proceedings affecting the liquidation of the assets of the estate,' because the claim arose out of the debtor's efforts to liquidate estate assets." Id. In short, such an action is a "core" proceeding. Id.

"With respect to contracts made by trustees, debtors in possession and other officers of the bankruptcy court, the necessity of the court retaining exclusive jurisdiction over matters arising out of such contracts is even more pronounced than in the case of other matters arising during the administration of the bankruptcy estate." Hawaiian Airlines, Inc. v. Mesa Air Group, Inc., 355 B.R. 214, 219 (D. Ha. 1996). "The courts have therefore adopted an extreme position with respect to this and have ruled that a party contracting with an officer of the court in fact contracts with the court itself, and by such act *subjects himself for the purposes of the contract to the summary jurisdiction of the court*." Id. (citing In re Arnold Print Works, Inc., 815 F.2d at 170) (emphasis in original).

9

Indeed, case law within the Third Circuit also demonstrates that a post-petition breach of contract action involving a contract with a debtor-in possession is a "core" proceeding within the exclusive jurisdiction of the bankruptcy court. See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co. 272 B.R. 104, 108 (E.D. Pa. 2001); In re Winstar Communications, Inc., 335 B.R. 556, 565 (Bankr. D. Del. 2009); In re Coram Healthcare Corp., Nos. 00-3299, 03-53964, 2003 Bankr. LEXIS 1664, *3 (Bankr. D. Del. 2003); In re Nutri/System, Inc., 159 B.R. 725, 727 (Bankr. E.D. Pa. 1993). "Contracts entered into with a bankruptcy fiduciary - a trustee or a debtor in possession - are 'integral to the estate administration ... .'" In re Porter, 295 B.R. at 536 n.3.

In fact, "numerous courts have found that claims based upon post-petition conduct may be core." See, e.g., In re Griffin Servs., Inc., Nos. 01-52373, 03-6114, 2005 Bankr. LEXIS 1116, *11 (Bankr. M.D.N.C. March 2, 2005). For example, in Griffin, a bankruptcy trustee asserted contractual and tort claims for relief against a prospective buyer of the debtor's assets and a former employee after a proposed asset sale fell through. Id. at **7-8. Specifically, the trustee alleged that the prospective buyer and former employee violated confidentiality agreements, misappropriated confidential information and, while the debtor sought approval of its asset sale to another buyer, used the misappropriated information to

set up a competing business with the debtor's clients. Id. at *13. The court found that this lawsuit was a "core" bankruptcy proceeding. Id.

Here, Interlake alleges that Summit breached the NDA, which is a contract between Summit and J&D, the debtor-in-possession. As such, the NDA is an agreement involving an agent of the Bankruptcy Court itself; that the Bankruptcy Court has exclusive jurisdiction to resolve this dispute "should therefore come as no surprise" to Interlake. See, e.g., Hawaiian Airlines, Inc., 355 B.R. at 220. As this lawsuit presents a claim for a post-petition breach of contract between Summit and a bankruptcy fiduciary, it is integral to the administration of the bankruptcy estate. In short, this lawsuit is a "core" matter that must be transferred to the Bankruptcy Court. This is particularly true here where the alleged breach occurred within the administration of the bankruptcy estate, the Adversary Proceeding is pending, the Bankruptcy Court has already heard testimony and argument concerning the very facts at issue, and a Notice of Appeal of the Order approving the Sale Motion has been filed.

Additionally, as set forth throughout Interlake's Complaint, this lawsuit involves alleged conduct that occurred within the administration of the bankruptcy estate. Like the trustee in Griffin, Interlake alleges that Summit obtained information improperly in the course of evaluating an asset purchase in bankruptcy and used J&D's information and former employees to establish a competing

11

business while J&D was seeking approval of its Sale Motion. As in <u>Griffin</u>, the resolution of these allegations is a "core" proceeding.

None of the above analysis is changed in any respect by the purported assignment of the causes of action at issue from J&D to Interlake, even if the assignment is valid. This lawsuit concerns the alleged post-petition breach of a contract between J&D and Summit and other conduct that occurred within the bankrupcty estate. Any lawsuit brought by J&D involving these allegations must be pursued in the Bankrupcty Court. As J&D's assignee, Interlake would be subject to this same restriction. <u>See</u>, <u>e.g.</u>, <u>E-Time Sys., Inc.</u>, 2002 U.S. Dist. LEXIS 15568 at *34.

### B. The Court Should Hear This Action Because It Is Related To The Bankruptcy Action.

Even if the Court finds that it may hear this action, which it should not for the reasons set forth above, the Court should refer and/or transfer this matter to the Bankruptcy Court because this action is related to the Bankruptcy Action and presents issues identical to those already pending in the Adversary Proceeding. The Bankruptcy Court is familiar with the dispute, has already taken testimony concerning Summit's objection to the Sale Motion, and is uniquely equipped to address efficiently and cost-effectively the issues raised by this lawsuit.

As set forth above, a bankruptcy court may hear "non-core" or "related" proceedings. 28 U.S.C. § 157(c); <u>In re Porter</u>, 295 B.R. at 536. In these

circumstances, a bankruptcy court submits proposed findings of fact and conclusions of law to the district court unless all parties agree that a final judgment may be entered in the bankruptcy court. Id.

"The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor v. Higgins, 743 F.3d 984, 994 (3d Cir. 1984); In re Porter, 295 B.R. at 537. "Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate." In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1181 (3d Cir. 1996).

Furthermore, "[u]nder the first filed rule, in cases of federal concurrent jurisdiction and absent exceptional circumstances, the court which first has possession of the subject must decide it." See, e.g., Butera, Beausang, Cohen & Brennan, P.C. v. Ryan, No. 00-2509, 2000 U.S. Dist. LEXIS 17878, **5-7 (E.D. Pa. Dec. 11, 2000).

Here, Interlake asserts claims for relief against Summit that arise entirely out of the Bankruptcy Action and raise issues identical to those pending in the Adversary Proceeding. The claims in this action and the Adversary Proceeding involve the parties' rights under the NDA, the rights and obligations of both J&D

13

and Interlake concerning the Sale, and the handling and administration of the bankruptcy estate. The resolution of this dispute will affect the parties' rights under, among other things, the NDA and J&D's rights and options with respect to its assets.

Additionally, Summit has filed the Adversary Proceeding against J&D for declaratory judgment and for J&D's bad faith in connection with the Sale. Principles of judicial economy and the avoidance of the possibility of inconsistent judgments favor the resolution of all claims arising out of the same set of facts in one lawsuit, which may occur only if the Court refers and/or transfers this lawsuit to the Bankruptcy Court.

Finally, Interlake has not proffered any "exceptional" circumstances for the Court not to apply the "first filed" rule. Nor can it do so in good faith as none exist. Thus, the Bankruptcy Court is the appropriate forum to resolve this lawsuit.

Again, J&D's purported assignment to Interlake changes none of the above analysis. See, e.g., E-Time Sys., Inc., 2002 U.S. Dist. LEXIS 15568 at *34.

## III.   CONCLUSION

For the reasons set forth above, Summit respectfully requests that the Court refer and/or transfer this matter to the United States Bankruptcy Court for the District of Delaware and award any additional relief that the Court deems appropriate.[7]

                Respectfully submitted,

                FOX ROTHSCHILD LLP

                /s/ *John J. Miravich*
                John J. Miravich, Esquire
                Attorney I.D. No. 56124
                Samuel W. Cortes, Esquire
                Attorney I.D. No. 91494
                Eagleview Corporate Center
                747 Constitution Drive, Suite 100
                P.O. Box 673
                Exton, PA  19341-0673
                (610) 458-7500
                *Attorneys for Defendant Summit Steel &*
                *Manufacturing, Inc.*

Date: August 31, 2009

---

[7] To the extent the referral/transfer requested by Summit's Motion requires the Court to first transfer this matter to the United States District Court for the District of Delaware for referral to the Bankruptcy Court, Summit hereby amends its Motion to request this relief.