IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERLAKE MECALUX, INC.,          :

          Plaintiff              :

                                 :

          vs.                    :     CIVIL NO. 1:CV-09-1610

                                 :

SUMMIT STEEL & MANUFACTURING,    :
ADAM L. WITMAN, BOB NEWTON,
RONALD K. GUDINAS, and           :
GEORGE H. MERRITT, JR.,
          Defendants             :


*M E M O R A N D U M*

## I.   *Introduction*

          The plaintiff, Interlake Mecalux, Inc. ("Interlake"),

filed a six count complaint against the defendants, Summit Steel

and Manufacturing, Inc. ("Summit Steel"), Adam L. Witman, Bob

Newton, Ronald K. Gudinas and George H. Merritt, Jr. (the

"individual Defendants"), alleging: (1) breach of fiduciary

duties and breach of confidentiality agreements against the

individual defendants; (2) civil conspiracy to breach fiduciary

duties and confidentiality agreements against all defendants;

and (3) breach of nonuse/nondisclosure agreements, and tortious

interference with business relations against Summit Steel.

          Pending before the court is Interlake's motion for a

preliminary injunction and Summit Steel's motion to refer and/or

transfer the case to the United States Bankruptcy Court for the

District of Delaware.  We have jurisdiction pursuant to 28

U.S.C. § 1332.  For the reasons that follow, we will deny both motions.

II.  *Factual and Procedural Background*

Interlake is a Delaware corporation with its principal place of business in Melrose Park, Illinois.  Summit Steel is a Pennyslvania Corporation with its principal place of business in Reading, Pennsylvania.  Summit Steel is a fabricator of machine parts and manufacturer of tubing and bar related products.  J&D Company was a longstanding customer of Summit Steel.  The individual Defendants are all former employees of J&D Company. Summit Steel currently employs Defendants Gudinas, Newton and Witman.

J&D Company is a debtor in bankruptcy. J&D was in the business of servicing and manufacturing vertical motorized storage systems for industrial and retail use.  J&D operated two divisions, Retail Service Solutions ("RSS") and J&D Manufacturing ("JDM").  RSS was the service side of J&D's business, while JDM was its manufacturing division.

As early as November of 2008, J&D was experiencing financial difficulties.  (Hearing Transcript ("HT"), 9/9/2009 at 14-15).  As early as January of 2009, J&D Company personnel were discussing the potential sale of the business.  (HT, 9/9/2009 at 38-39).  Joseph DePoto, a former J&D Company employee, now employed by Interlake, testified that at a January 2009 meeting

several potential buyers for JDM were discussed. (HT, 9/9/2009 at 38-40). In February of 2009, Summit Steel was approached and informed that J&D Company would either be sold or liquidated. (HT, 9/17/2009 at 5-6).

J&D Company invited Summit Steel to bid on its RSS division in March of 2009. *Id.* at 8-9. At the end of March, Gary Romig, acting in his capacity as president of Summit Steel, signed a non-use and non-disclosure agreement ("NDA"). *Id*. at 29. The partes to the NDA were Summit Steel and J&D Company, LLC. Ex. D. The NDA prohibited the use of any confidential information for any purpose other than to evaluate and engage in discussions about the sale of J&D Company assets, in this instance the RSS division. Ex. D ¶¶ 2 and 3. Interested parties had to sign a NDA in order to be given access to marketing materials, detailing the assets to be purchased, and a database detailing confidential information on the RSS and JDM divisions. (HT, 9/9/2009 at 85). On or about March 25, 2009, Summit Steel offered to purchase the J&D Company's assets, inventory and some account receivables. (HT, 9/17/2009 at 8-9). After being told that another party was interested in purchasing the RSS division, Summmit Steel undertook a cursory review of RSS and decided against purchasing it. *Id*. at 8-10.

The RSS and JDM divisions of J&D Company were purchased by Interlake out of bankruptcy on June 29, 2009 and July 23, 2009, respectively. After these sales were approved by

the bankruptcy court, the court confirmed the bankruptcy plan of J&D Company on August 11, 2009. The plan became effective on August 24, 2009.

Throughout this process, beginning as early as January of 2009 and continuing into June of that same year, Summit Steel interacted with J&D Company employees and customers. (HT, 9/9/2009 at 16-17). There is conflicting evidence as to whether these discussions were part of Summit Steel's due diligence into its potential purchase of JDM or whether it was an improper solicitation in an attempt to syphon-off J&D Company business. The testimony of Mr. DePoto indicates that there was a discussion at a January 2009 meeting involving a mass resignation of several of the individual Defendants, namely Mr. Witman, Mr. Merritt and Mr. Newton, in order to cripple J&D's business. (HT, 9/9/2009 at 16-17). However, the testimony of Mr. Merritt, which we find credible, rebuts the testimony of Mr. DePoto. Mr. Merritt and other employees were told to keep all leads on potential buyers open, which included Summit Steel. (HT, 9/17/2009 at 93-97). On the day of his resignation, Mr. Merritt delivered four new sales agreements to J&D Company. *Id.* at 93-94. He also testified that he, Newton and Witman waited until after July 4th to resign, so they could receive vacation pay for the holiday. *Id.* at 23. At the time of these resignations, J&D Company had stopped taking orders, stopped manufacturing goods and had begun layoffs. *Id.* The evidence

also shows that Summit Steel made no offers of employment to the individual Defendants prior to their resignations. *Id.* at 25.

There is also conflicting evidence regarding Summit Steel's acquisition of a vertical carousel machine rack. J&D Company claims that Summit Steel improperly received confidential information on the engineering of this rack. However, Summit Steel claims, and is supported by the record, that it acquired the carousel from J&D Company as an offset for money it was owed by J&D Company. It then reverse-engineered this rack without using any blueprints or other confidential information. We believe the evidence is overwhelming to support Summit Steel's reverse-engineering claim, and the claims of Interlake are not supported by the record.

On August 18, 2009, Interlake filed its complaint in the Court of Common Pleas for Dauphin County, Pennsylvania seeking a temporary restraining order and a preliminary injunction. The case was removed to this Court on August 24, 2009. We denied Interlake's motion for a temporary restraining order on August 26, 2009. Summit Steel then filed its motion to refer and/or transfer this case to the Bankruptcy Court for the District of Delaware.

*III. Discussion*

   *A. Motion to Refer/Transfer*

   At the outset, Summit Steel argues that we lack
jurisdiction to hear this action because it is a "core"
proceeding under the bankruptcy code and the bankruptcy court is
afforded exclusive jurisdiction over such claims.  Interlake
argues that this action cannot be transferred because the
bankruptcy court lacks jurisdiction.

   Even if we assume, *arguendo*, that this matter falls
under Title 11, Summit Steel's position is untenable in light of
28 U.S.C. § 1334.  Section 1334 confers "original but not
exclusive jurisdiction" on the district courts over all civil
proceedings "arising under," "arising in" or "related to" cases
under Title 11.  28 U.S.C. § 1334(b).  The real question that
concerns us is whether we should transfer this matter to the
Bankruptcy Court for the District of Delaware pursuant to 28
U.S.C. § 1404.

   Before addressing the parties arguments, we briefly
set forth the law on bankruptcy court jurisdiction.

        Bankruptcy jurisdiction extends to four
        types of title 11 matters: (1) cases "under"
        title 11; (2) proceedings "arising under"
        title 11; (3) proceedings "arising in" a
        case under title 11; and (4) proceedings
        "related to" a case under title 11.  *In re
        Combustion Eng'g, Inc.*, 391 F.3d 190, 225
        (3d Cir. 2005).  The category of cases
        "under" title 11 "refers merely to the
        bankruptcy petition itself."  *Id.* at 225-26
        n.38 (quotation and citation omitted).  A

case "arises under" title 11 "if it invokes
a substantive right provided by title 11."
*Torkelsen v. Maggio (In re Guild & Gallery
Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir.
1996)....The category of proceedings
"arising in" bankruptcy cases "includes such
things as administrative matters, orders to
turn over property of the estate and
determinations of the validity, extent, or
priority of liens." 1 *Collier on Bankruptcy*
§ 3.01[4][c][iv] at 3-31 (quotations and
footnotes omitted). Proceedings "arise in"
a bankruptcy case, "if they have no
existence outside of the bankruptcy."
*United States Trustee v. Gryphon at the
Stone Mansion, Inc.,* 166 F.3d 552, 556 (3d
Cir. 1999). Finally, a proceeding is
"related to" a bankruptcy case if "the
outcome of that proceeding could conceivably
have any effect on the estate being
administered in bankruptcy." *In re Pacor,
Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.
1984); *see also In re Federal-Mogul Global,
Inc.,* 300 F.3d 368, 381 (3d Cir. 2002)
(noting that *Pacor* "clearly remains good law
in this circuit" in this respect).

*Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)(footnote

omitted). A distinction is made between "core" and "non-core"

proceedings. Core proceedings are from the first three

categories: (1) a case "under" title 11; (2) a proceeding

"arising under" title 11; and (3) a proceeding "arising in" a

case under title 11. *Id.* at 217 (quoting *In re Combustion Eng'g,

Inc.,* 391 F.3d 190, 225 (3d Cir. 2004)). Non-core proceedings

are proceedings related to a case under title 11. *Id.*

This is not a bankruptcy case, *see Stoe, supra*, 436

F.3d at 216 (a case "under" title 11 refers to the bankruptcy

case itself), so we are concerned here only with the last three

categories of bankruptcy jurisdiction: (1) "arising under"

jurisdiction; (2) "arising in" jurisdiction; and (3) "related to" jurisdiction. "Non-core 'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is 'related to' the bankruptcy." *In re Resorts Int'l, Inc.,* 372 F.3d 154, 163 (3d Cir. 2004)(citation omitted).

In a case filed post-confirmation, we apply the "close nexus test" to determine "related to" jurisdiction. *Id.* at 166-67. Essentially, our inquiry is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." *Id.* "The claim must affect an integral aspect of the bankruptcy process...." *Id.* at 167. This test is applicable "regardless of when the conduct alleged in the complaint occurred." *In re Seven Fields Dev. Corp.,* 505 F.3d 237, 265 (3d Cir. 2007).

Summit Steel argues that, at the very least, this case is related to a bankruptcy proceeding ongoing in Delaware and presents issues identical to those pending in an adversary proceeding in said court. Additionally, the Defendant argues that "this lawsuit concerns an interpretation of the Asset Purchase Agreement...between Interlake and J&D Company, LLC....The Bankruptcy Court expressly retained jurisdiction over all disputes concerning an interpretation of the [asset purchase agreement]....." Reply Br. at 1-2. Thus, "as this lawsuit

presents such a dispute, the Court must transfer it...." *Id.* at 2.

First, "[r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction." *Resorts Int'l*, 372 F.3d at 161. Second, after confirmation of a bankruptcy plan, retention of bankruptcy jurisdiction is problematic. *Id.* at 164-65. "This is so because...bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'" *Id.* at 165.

As to the bankruptcy court's retention of jurisdiction, we find this argument unpersuasive. Upon the effective date of the asset purchase agreement, the Plaintiff either acquired the rights under the NDA or it did not. The fact that we may have to read the asset purchase agreement in order to determine this issue does not mean that we will have to construe or interpret orders or documents integral to the bankruptcy proceedings. Additionally, nowhere in this lawsuit are we being asked to construe or interpret the bankruptcy plan or to see that bankruptcy laws are being observed. If we were to adopt Summit Steel's interpretation, the bankruptcy court could conceivably have jurisdiction in perpetuity over any dispute that may arise between Interlake and another non-debtor.

The ties between the bankruptcy proceeding and this action are tenuous.  True, this matter does have a connection to the bankruptcy proceeding in Delaware because Interlake purchased assets of the bankruptcy debtor J&D Company during bankruptcy proceedings.  However, the assets are no longer a part of the bankruptcy estate since they have been sold to Interlake.  Because the assets are no longer part of the estate, this litigation between the purchaser and a third party can have no effect on the debtor, its assets, its liabilities or the bankruptcy estate as neither the debtor, nor the estate, have any further interest in the assets.  This proceeding is actually unrelated to the bankruptcy because the outcome "will not affect the property to be administered in the bankruptcy case, the total assets to be distributed, or the total claims to be paid." *In re Porter,* 295 B.R. 529, 538 (Bankr. E.D. Pa. 2003)(describing "unrelated" proceedings over which a bankruptcy court lacks jurisdiction).  Additionally, the thrust of the Plaintiff's claims center on an alleged conspiracy between Summit Steel and former employees of J&D Company to transfer business from J&D to a competitor.  These state law claims could arise in any business context, not just during a bankruptcy proceeding.  We conclude the bankruptcy court has no jurisdiction over this action because this case is not "related to" the bankruptcy proceeding.

Next, Summit Steel argues that pursuant to the "first to file" rule this case should be transferred to the bankruptcy court in Delaware because it filed a declaratory judgment action in said court that is identical to this proceeding. As Interlake argues, however, Summit Steel's declaratory judgement action was filed against the debtor J&D Company, not Interlake. Additionally, Interlake argues that the "first to file" rule should not apply since it was not served with the complaint until after its action was filed in Dauphin County.

Interlake is mistaken because service is not required in order for the "first to file" rule to apply. *Allianz Like Ins. Co. of North America v. Estate of Bleich*, No. 08-668, 2008 WL 4852683, at *4 (D.N.J. Nov. 7, 2008). Filing of a complaint, not service, is the trigger for the rule. *Id.*(citing *Pacesetter Sys., Inc. v. Medtronic, Inc.* 678 F.2d 93, 96 n.3 (9th Cir. 1982).

The first to file rule encourages "sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). The rule grants a court the power to "enjoin the subsequent prosecution of proceedings involving the *same parties* and the *same issue* already before another district court." *Id.*(emphasis added). However, this rule is not rigid. We have discretion to retain jurisdiction given appropriate circumstances. *Id.* at 972.

11

When evaluating a first to file issue, we must take into account the same factors used in 28 U.S.C. § 1404(a) transfer motions. *Nature's Benefit, Inc. v. NFI,* No. 06-4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007). If those factors balance in favor of the first to file party, then we may dismiss, stay or transfer the second-filed action. *Id.* Under certain circumstances, we may depart from the first to file rule. Those circumstances include bad faith on the part of the party who filed first, forum-shopping, inequitable conduct and where the second filed action is more fully developed than the first. *Id.* (citing *One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc.,* 987 F.Supp. 317, 328 (D.N.J. 1997).

28 U.S.C. § 1404(a) provides that a civil action may be transferred to "any other district or division where it might have been brought" if it is for the "convenience of parties and witnesses, in the interest of justice." In addition to assessing the motion in light of the factors specified in the statute, we should also consider relevant public and private interests, as explained by the Third Circuit:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to

> the extent that the files could not be
> produced in the alternative forum).
>
> The public interests have included:  the
> enforceability of the judgment; practical
> considerations that could make the trial
> easy, expeditious, or inexpensive; the
> relative administrative difficulty in the
> two fora resulting from court congestion;
> the local interest in deciding local
> controversies at home; the public policies
> of the fora; and the familiarity of the
> trial judge with the applicable state law in
> diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir.
1995) (citations omitted).

After considering all the relevant factors, we
conclude that the first to file rule does not apply in this
case.  First, the parties and the issues in the declaratory
judgment action are not identical.  *See* Bankruptcy Docket No.
09-10019.  The parties in that action are Summit Steel and the
bankruptcy debtor J&D Company.  The issue is the validity of the
NDA.  However, the validity of the NDA is but one issue before
this court.  Interlake, a non-party to the pending declaratory
judgment action, alleges multiple violations of Pennsylvania
law, none of which are alleged in the bankruptcy filing.
Additionally, the state law actions brought by the Plaintiff are
independent of the validity of the NDA.  Second, the case
pending before this court is further along than the declaratory
judgment action.  In this matter, we have taken testimony,
admitted evidence and decided motions.  The complaint in the

declaratory judgment action has only recently been served on the defendant in that case. Third, as we mentioned earlier, we do not believe the bankruptcy court has jurisdiction over the matters involved in this case. Fourth, at this time, it appears the Plaintiff is entitled to a jury trial. A bankruptcy court cannot conduct a jury trial in non-core proceedings. *Beard v. Braunstein*, 914 F.2d 434, 442 (3d Cir. 1990). Since the pending issues are unrelated to the bankruptcy, a jury trial could not be conducted by the bankruptcy court in this matter. Finally, we conclude judicial economy, and convenience of the witnesses and parties warrants our not invoking the first to file rule. Accordingly, we will deny Summit Steel's motion to refer and/or transfer to the bankruptcy court.

    B.   *Preliminary Injunction*

        We have jurisdiction over this case because of diversity of citizenship. In a diversity case, we must apply the substantive law of Pennsylvania. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817 (1938). The party seeking a preliminary injunction bears the burden of producing clear evidence that they are entitled to relief. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

        In deciding whether to grant or deny a preliminary injunction, we must determine whether: (1) an injunction is necessary to prevent immediate and irreparable harm; (2) greater injury would result from refusing an injunction than from

granting it; (3) an injunction would properly restore the parties to their status before the alleged wrongful conduct; (4) the movant is likely to prevail on the merits; (5) the requested injunction is reasonably suited to abate the offending activity; and (6) an injunction would not adversely affect the public interest. *Summit Towne Center, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995, 1001 (Pa. 2003). "For a preliminary injunction to issue, every one of these prerequisites must be established; if the [Plaintiff] fails to establish any one of them, there is no need to address the others." *Allegheny County v. Commonwealth of Pennsylvania*, 518 Pa. 556, 544 A.2d 1305, 1307 (Pa. 1988) *see also Int'l Union v. Textron Lycoming Reciprocating Engine Div.,* 919 F.Supp 783, 789 (M.D. Pa. 1996("Irreparable harm and likelihood of success on the merits are essential elements....Absent a showing of either one, the [plaintiff] is not entitled to injunctive relief.").

Interlake has not presented sufficient evidence for us to conclude that it is likely to prevail on the merits on any of its claims. As mentioned previously, Interlake alleges: (1) breach of fiduciary duties and breach of confidentiality agreements against the individual defendants; (2) civil conspiracy to breach fiduciary duties and confidentiality agreements against all defendants; and (3) breach of nonuse/nondisclosure agreement, and tortious interference with business relations against Summit Steel.

With respect to Interlake's claims for breach of confidentiality agreements and civil conspiracy to breach said agreements, no confidentially agreements were admitted into evidence. Therefore, any claim for breach of such agreements or conspiracy to breach such agreements will fail because there is no evidence before the court that such agreements exist.

In order to prevail on a claim for beach of fiduciary duties, there must be a fiduciary relationship. Under Pennsylvania law, a fiduciary relationship exists where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other. *Commonwealth Dept. Of Transp. v. E-Z Parks, Inc.*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993)(citation omitted). "A business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other." *Id.* "Further, when a person authorizes another to act as his or her agent, the relationship between the two may be characterized as a fiduciary relationship." *McDermott V. Party City Corp.,* 11 F.Supp.2d 612, 626 (E.D. Pa. 1998)(citing *Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318, 1323 (Pa. 1987).

The elements the Plaintiff must prove in a claim for breach of fiduciary duty are: (1) that the defendant negligently

or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about the plaintiff's injuries. *McDermott*, 11 F.Supp.2d at 626 n.18 (citing Pa. S.S.J.I. § 4.16 (1991)).

Interlake has not presented sufficient evidence to find that it is likely to prevail on the merits of its beach of fiduciary duty claim. The record supports a finding that the cause of action for breach of fiduciary duty was transferred to Interlake via its purchase of the RSS and JMD divisions of J&D Company. *See* Exs. A & B sections 2.1(b)(viii) & 2.1, respectively. However, the testimony and evidence presented during the preliminary injunction hearing does not establish that Interlake is likely to prevail on the merits. First, the testimony failed to show that each of the individual Defendants acted in bad faith. Second, the evidence did not show that the Plaintiff suffered an injury due to any behavior on the part of the individual Defendants. We agree that the testimony of Plaintiff's witnesses indicated that Interlake has suffered some losses in its business. However, the evidence does not sufficiently support a finding that any loss in business was caused by acts of the Defendants.

We agree with the Defendants that Interlake has not established that it is likely to prevail on the merits for its civil conspiracy claim. In order to prevail on its claim of civil conspiracy to breach fiduciary duties, Interlake must show that: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998). The evidence does not show that the individual Defendants in concert with Summit Steel conspired to breach fiduciaries duties. First, there is insufficient evidence to show that the Defendants either intended or, in fact, succeeded in breaching any fiduciary duties it may have owed Interlake. Second, the Plaintiff failed to provide sufficient evidence showing it has suffered actual legal damages. Thus, we find that the evidence does not support the issuance of a preliminary injunction on this claim for relief.

We also agree with the Defendants that there is insufficient evidence to show that Interlake is likely to prevail on the merits for its breach of the NDA claim. In order to prevail on its claim, Interlake must prove: 1) the existence of a contract, including its essential terms, 2) a breach of a duty imposed by the contract and 3) resultant damages. *Gorski v Smith*, 812 A.2d 683, 682 (Pa. Super. 2002). The record supports

the finding that the non-disclosure agreement Summit Steel entered into with J&D Company was transferred to Interlake via the asset purchase agreements. *See* Exs. A & B sections 2.1(b)(xii) & 2.1(b)(ix), respectively. However, there is insufficient evidence showing that Summit Steel breached its duty to not disclose confidential information. The evidence presented by Interlake was that Summit Steel's president viewed certain confidential material after signing the NDA. The evidence, however, does not show that Summit Steel then intentionally, knowingly, recklessly or negligently disclosed or used this information for any purpose other than what is allowed under the agreement. Therefore, we conclude that the evidence does not support the issuance of a preliminary injunction on this claim for relief.

Interlake's final claim for relief is a tortious interference with business relations claim against Summit Steel. Interlake alleges that Summit Steel unlawfully interfered with its business relationships with suppliers and customers. Complaint ¶¶ 85-86. The elements for tortious interference with business relations under Pennsylvania law are:

> (1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct.

*Triffin v. Janssen*, 426 Pa. Super. 57, 63, 626 A.2d 571, 574 (Pa. Super. 1993)(footnote omitted). *See also Breon v. Waypoint Ins. Group*, 2007 WL 1575225, at *3 (M.D. Pa. May 31, 2007). "Thus, a tortious interference claim does not accrue until, at least, the plaintiff suffers injury (i.e. 'actual legal damage') as a result of the defendant's conduct." *CGB Occupational Therapy v. RHA Health Services, Inc.,* 357 F.3d 375, 384 (3d Cir. 2004); *Sharp v. Whitman Council, Inc.,* 2007 WL 2874058, at *5 (E.D. Pa. Oct. 1, 2007).

We agree with Summit Steel that the Plaintiff has not met its burden showing that it is likely to prevail on the merits of its tortious interference claim. The evidence is insufficient to show that Summit Steel has interfered with the business relations or contracts that Interlake has between it and its customers or suppliers.

Since we find that Interlake has failed to meet its burden showing it is likely to prevail on the merits, we conclude that it is not necessary to review the other factors for granting a preliminary injunction.

## IV. Conclusion

Based on the foregoing analysis, we will deny the Plaintiff's motion for a preliminary injunction and also deny

Summit Steel's motion to refer and/or transfer this case to the
bankruptcy court.  We will issue an appropriate order.


                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge

Date: October 2, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


INTERLAKE MECALUX, INC.,          :

          Plaintiff               :

                                  :
          vs.                         CIVIL NO. 1:CV-09-1610
                                  :

SUMMIT STEEL & MANUFACTURING,     :
ADAM L. WITMAN, BOB NEWTON,
RONALD K. GUDINAS, and            :
GEORGE H. MERRITT, JR.,
          Defendants              :



*O R D E R*


          AND NOW, this 2nd day of October, 2009, after holding

a hearing for a preliminary injunction and upon consideration of

the parties briefs, it is ordered that:

          1.  Plaintiff's motion for a preliminary
          injunction is denied.

          2.  Defendant's motion to refer and/or
          transfer this case to the bankruptcy court
          (doc. 3) is denied.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge